UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 04-50134-01 |
| | CIVIL NO. 08-1195 |
| VERSUS | |
| | JUDGE S. MAURICE HICKS, JR. |
| ERIC GERMAN | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before this Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Record Document 231) filed on behalf of Petitioner, Eric German. German seeks an order from the Court vacating his conviction or, in the alternative, vacating his sentence and setting the matter for a new sentencing hearing on the following grounds: (1) ineffective assistance of trial counsel for failing to file two suppression motions, and failing to request a sentence below the sentencing guidelines; (2) the prosecution against him was illegal in light of an immunity agreement;[1] and (3) his sentence is unconstitutional under the Fifth and Sixth Amendments, including the right to trial by jury. For the reasons below, German's motion is **DENIED**.

**FACTUAL BACKGROUND**

On June 23, 2005, a federal grand jury returned a third superseding indictment against Eric German ("German"), Felicia Smith ("Smith"), and Richard Randale Jackson ("Jackson"). [Record Document 78]. The Petitioner, German, was named in Count One

---

[1] Petitioner withdrew this ground for relief in his Reply Memorandum in Support of Motion Under 28 U.S.C. § 2255. See Record Document 245.

(conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846), Count Two (conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846), Count Three (conspiracy to distribute marijuana in violation of §§ 841(a)(1) and 846), Count Four (possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1)), Count Five (possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1)), Count 11 (possession of a firearm in violation of 18 U.S.C. § 924(c)(1)),[2] and Count Twelve (conspiracy to commit money laundering in violation of 18 U.S.C. § 1956). Id.

On August 17, 2005, after an eight-day jury trial, German was found guilty as charged on Count One, Count Two, Count Four, Count Five and Count Twelve and not guilty as to Count Three. [Record Document 143]. German was then sentenced on December 15, 2005, to a term of life for Counts One, Two and Five with the sentences to run concurrently; as to Count Four, German was sentenced to a term of forty (40) years; and as to Count Twelve, German was sentenced to a term of twenty (20) years with both terms running concurrently with the life sentence. [Record Document 177]. The United States Court of Appeals for the Fifth Circuit affirmed the defendant's conviction on May 14, 2007. [Record Document 214]; See United States v. German, 486 F.3d 849 (5th Cir. 2007).

On August 14, 2008, German filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Record Document 231). The Petitioner, through counsel, refined his position and asserts four grounds of relief:

---

[2]This Count was dismissed on the sixth day of trial. See Record Document 126.

    a.    Mr. German's prior counsel was prejudicially ineffective for failing to move to suppress the evidence found in the White Caprice;

    b.    Mr. German's prior counsel was prejudicially ineffective for failing to move to suppress the statement the government claimed Mr. German made to police after his arrest;

    c.    Mr. German's prior counsel was prejudicially ineffective for failing to request a sentence below the U.S. Sentencing Guidelines Range based upon the unjust disparity between crack and powder cocaine; the District Court sentenced Mr. German without understanding its authority to impose a sentence blow the Guidelines Range on that ground; and

    d.    the Petitioner's Claim that he was sentenced in violation of his rights to Due Process and trial by jury is not procedurally barred.

[Record Document 245].

## LAW AND ANALYSIS

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc), (quoting United States v. Frady, 456 U.S. 152, 164; 102 S.Ct. 1584, 1592; 71 L.Ed.2d 816 (1982). "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary, a final judgement commands respect." Frady, 456 U.S. at 164-65, 102 S.Ct. at 1593. Consequently, issues that can be presented in a motion filed under 28. U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error. Frady, 456 at 168; United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (citing Shaid, 937 F.2d at 232). To establish "cause," defendant must show some external impediment prevented him from raising the claim on direct appeal. See United States v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233. A narrow exception to the cause and actual prejudice requirement exist in extraordinary cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 232. The Supreme Court has emphasized that this exception is limited to only those cases involving "manifest miscarriages of injustice" that would result in the continued incarceration of an innocent person. Id., citing Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661 2667, 91 L.Ed. 2d 434 (1986). The Supreme Court in Kuhlmann v. Wilson requires:

> federal courts to entertain successive petitions when a petitioner supplements a constitutional claim with a "colorable showing of factual innocence." The miscarriage of justice

> exception to cause serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty," Stone v. Powell, 428 U.S., at 492-493, n. 31, 96 S.Ct., at 3051, n. 31, guaranteeing that the ends of justice will be served in full.

Kuhlmann v. Wilson, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627 (1986).

### 1. Ineffective Assistance of Counsel.

The general rule prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693, 155 L.Ed. 2d 714 (2003). This "procedural-default rule is neither a statutory nor constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id. at 503. Requiring a criminal defendant to bring claims of ineffective assistance of counsel on a direct appeal does not promote these objectives. Id. A claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations. United States v. Alanis, 88 Fed. Appx.15, 19 (5th Cir. 2004). Thus, a criminal defendant is permitted to bring ineffective assistance of counsel claims in a collateral proceeding under § 2255, regardless of whether such claims could have been raised on direct appeal. Id.

To prevail on claims of ineffective assistance of counsel, German must prove (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Bryant v. Scott, 28 F.2d 1411, 1414-15 (5th Cir. 1994). Under the first prong of the Strickland analysis, German must show that his

counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id., 466 U.S. at 690, 104 S.Ct. at 2066.

Under the second prong of the Strickland test, German must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability to undermine confidence in the outcome." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. German must demonstrate that the attorney's actions "were so serious as to render the proceeding unreliable and fundamentally unfair." United States v. Saenz-Forero, 27 F.3d 1016 1021 (5th Cir. 1994) citing Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). If German fails to establish either prong of the Strickland test, his claim of ineffective assistance of counsel must be denied. See Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997); Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994); Williams v. Collins, 16 F.3d 626, 631 (5th Cir. 1994).

### a. Failing to Move to Suppress the Evidence Found in the White Caprice

Petitioner argues that his attorney was ineffective for failing to file a motion to suppress the evidence found in a white Caprice automobile driven by Petitioner. Specifically, defendant argues "[t]he record now combined with the affidavits of Mr. German

and Ms. Smith establish that the officers searched the Caprice without obtaining consent and without having probable cause to search the [C]aprice." [Record Document 240 at 12]. German supplements the record with two affidavits–one from himself and another from his co-conspirator Smith–that declare neither of them gave consent for the search of the vehicle. See Record Document 247 and Record Document 240-1.

The Court has reviewed the entire record and trial transcripts. The Government did not call the officer who stopped the car driven by German and obtained the consent of either German or Smith to search the vehicle. Nor has the government attached to their answer to this motion an affidavit from that officer attesting to whether or not he actually received consent. The only mention of consent in the record comes from the testimony of Sergeant Shane Culver of the Bossier City Police Department who testified that he understood "that they [the police officers on the scene of the traffic stop] had permission to search." [Trial Tr., Vol. III, p. 189].

There is ample reason for the consent to search issue appearing in the record only in passing. At the end of the second day of trial, the Court held a conference with all of the parties (including the Defendants) out of the presence of the jury. The Court inquired about Phyllis Mann's (Eric German's retained counsel) and Daryl Gold's (Smith's retained counsel) line of questioning about the stop. The Court questioned counsel if they planned on challenging the legality of the stop. Ms. Mann, Petitioner's trial counsel, opined on this "stop" stating "I don't believe that I have a legal basis to challenge the stop, because I think they did wait for them to commit a traffic violation and then, following the traffic violation, asked for a consent to search, and everything ensued from there. And had I thought differently, I would have filed a motion to suppress." [Trial Tr., Vol. IV, p. 449]. German,

who was present for this exchange, did not object.[3] Nor did he object after the verdict was rendered. Instead, the first argument that no consent was given was raised some two and a half years after the original verdict. At the time of trial, the Court agreed with Ms. Mann's analysis of the facts and the law. Nothing has changed the Court's opinion. Supporting this Court's conclusion on the issue of consent, the Fifth Circuit, reviewing this case on direct appeal, found that the street level police officer who stopped Petitioner "got consent to search the car." United States v. German, 486 F.3d 849, 851 (5th Cir. 2007). For all intents and purposes, this is a dead issue.

Consent was given by German to search the white Caprice driven by Petitioner. However, German and Smith's affidavits create a meager "after-the-fact" issue for this Court to resolve. Consent to search the vehicle was obtained and the legal search bore fruit in the form of illegal drugs. So, regardless of whether or not consent was given, the Court nonetheless arrives at the same conclusion–the police officers' search of the white Caprice was completely lawful under the collective knowledge doctrine.

Solely for the purpose of this motion, this Court will assume that consent was not given to search the white Caprice automobile driven by Petitioner. According to German's Second Affidavit, "[w]hen I [German] discussed my case with my attorney Phyllis Mann, on

---

[3]"Statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." Tucker v. Housing Authority of Birmingham Dist., 229 Fed. Appx. 820, 826 (11th Cir. 2007) (quoting Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994)). From this Court's reading of the Federal Rules of Evidence, particularly Rule 801(d)(2) addressing admissions of party-opponent, this Court is inclined to view Ms. Mann's assertion made on the record with her client, Eric German, present as an admission of a party-opponent and rely on it as such. The trial record accurately reflects the total absence of any evidence indicating facts contrary to Ms. Mann's on the record assertion that vehicle search was not an issue.

more than one occasion I told her that neither I nor Felicia Smith gave the Bossier City (or any) officers consent to search the white Caprice. I even suggested to Ms. Mann that she move to suppress the evidence found in the Caprice. She refused to do so." [Record Document 247-1 at 1]. This Court readily admits that these two affidavits from German and co-conspirator and live-in companion Smith are blatantly self-serving, and the second affidavit from German has been prepared for the sole purpose of addressing shortcomings in Petitioner's affidavit raised by the Government in its answer. These affidavits are suspect. Nonetheless, they are competent evidence for this motion and comply with all of the technical formalities. Thus they create an "after-the-fact" issue for the Court to consider.

Upon review of the jurisprudence, this specific "after-the-fact" issue is not determinative, and this Court can dispose of this issue regardless of whether or not consent was given for the search. In fact, the officers could have legally searched the car without consent.

Under the automobile exception to the warrant requirement, a lesser expectation of privacy attaches to a vehicle when it is being used on the highways. California v. Carney, 471 U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Therefore, officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains contraband or evidence of a crime. Mack v. City of Abilene, 461 F.3d 547, 552 (5th Cir. 2006). Whether probable cause exists requires a practical, common-sense determination of whether the circumstances, including information obtained from an informant, establish that there was a fair probability that contraband or evidence of a crime

will be found in a particular place. United States v. Steele, 2009 WL 4039444 (5th Cir. 2009).

The Government does not argue, but the Court finds that the search of Petitioner's car was justified based on Sergeant Culver's probable cause to believe that Petitioner was transporting drugs and that Petitioner's car would contain evidence. The street level police officer who stopped the white Caprice did not have probable cause to believe that German was involved in illegal drug distribution activity. That officer knew none of the background details concerning German and his operation and knew only that narcotics agents wanted him to stop German's car and develop probable cause (or obtain consent) for a search. This Court finds that probable cause still existed for the street level police officer's search under the collective knowledge doctrine.

The Fifth Circuit has applied the collective knowledge doctrine in two distinct types of cases: (1) those where the arresting officer has no personal knowledge of any of the facts establishing probable cause, but simply carries out directions to arrest given by another officer who does have probable cause, e.g., United States v. Impson, 482 F.2d 197 (5th Cir. 1973); United States v. Allison, 616 F.2d 779 (5th Cir. 1980); and (2) those where the arresting officer has personal knowledge of facts which standing alone do not establish probable cause but, when added to information known by other officers involved in the investigation, tips the balance in favor of the arrest, e.g., United States v. Nieto, 510 F.2d 1118, 1120 (5th Cir. 1975); United States v. Agostino, 608 F.2d 1035, 1037 (5th Cir.1979).

In the former cases, the officer who issues the directive must himself have probable cause to arrest. Weeks v. Estelle, 509 F.2d 760, 765 (5th Cir. 1975), cert. denied, 423 U.S. 872, 96 S.Ct. 139, 46 L.Ed.2d 103 (1975); United States v. Simpson, 484 F.2d 467, 468

(5th Cir. 1973). In the latter cases, the "laminated total" of the information known by officers who are in communication with one another must amount to probable cause to arrest. United States v. Edwards, 577 F.2d 883, 895 (5th Cir. 1975) (en banc); Agostino, 608 F.2d at 1037; United States v. Webster, 750 F.2d 307, 323 (5th Cir. 1984). Thus, the arresting officer need not have personal knowledge, if being directed by another who does. See e.g., United States v. Ibarra, 493 F.3d 526, 530 (5th Cir. 2007) (probable cause existed under the collective knowledge doctrine where arresting officer did not know all of the facts; arresting officer was told to be on the look-out for a certain vehicle and to make a traffic stop if the driver violated any traffic laws). The collective knowledge doctrine is not limited to probable cause for arrests; it has also been applied in the context of reasonable suspicion for a traffic stop. See, e.g., United States v. Carmenate, 2009 WL 2998568 (5th Cir. 2009) (collective knowledge supported reasonable suspicion for traffic stop); United States v. Cortez, 2008 WL 5068619 (5th Cir. 2008)(collective knowledge provided reasonable suspicion for traffic stop and justified continued detention while the officers waited for canine to arrive).

According to the appellate decision on direct appeal by German to the United States Court of Appeals for the Fifth Circuit:

> By the evidence, defendant Eric German regularly bought cocaine by the kilo at the Downtown Collision Shop on Oak Cliff Street in Dallas, drove it home to Louisiana, turned some into crack, and sold both throughout North Louisiana. He lived with his girlfriend, Defendant Felicia Smith, who often helped out, buying baking power, and accompanying him on pickups and deliveries. State's witness Kelvin Gay was Eric German's right-hand man. Before Kelvin Gay was convicted in 2001 on drug charges, he distributed large quantities of crack and cocaine for Eric German. Eric German paid for Gay's defense in 2001, and regularly sent him money while he was

> in prison. German also helped Gay earn a downward departure by fabricating stories about drug dealers that they knew, and even setting up a dealer on Gay's behalf. For his substantial assistance, Gay's sentence was reduced to thirteen years, six months.
>
> . . .
>
> In August of 2004, police officers tailed German and Smith while on their drug runs–a meeting with a tow truck, a visit to an apartment complex, and an exchange of packages at a car wash. Eventually, German and Smith violated the traffic code. Officers pulled them over, got consent to search the car, and found one kilo of cocaine in the engine compartment. Officers next got a warrant to search a second car that the couple had left at the apartment complex, and found in its engine compartment both crack and cocaine. At the station, German waived his Miranda rights and admitted the details of his crime, including the names of his supplier and distributors.

United States v. German, 486 F.3d 849, 850-51 (5th Cir. 2007). Again this Court emphasizes that the consent to search issue is a dead issue.

Evidence at trial also showed long and extensive surveillance of German and multiple trash pulls at his residence that produced wrappers that tested positive for cocaine residue. Those trash pulls also produced marijuana stems. All of these trash pulls evidencing cocaine and marijuana occurred well before the August 14, 2004 traffic stop.

Under the totality of the circumstances, the narcotics officers had probable cause to believe that German's white Caprice automobile would contain evidence of the recent cocaine transactions. In other words, there was a fair probability that German's vehicle would contain drugs or other contraband related to German's drug deals. However, rather than compromising their ongoing investigation, they asked a street level police officer to conduct a pretextual traffic stop in an effort to obtain German's consent to the search of his

car. Under the collective knowledge doctrine, that police officer had probable cause to search German's car during the traffic stop for evidence of cocaine transactions.

This Court and the Fifth Circuit have both found that consent was given to search the white Caprice automobile driven by German. However, solely for the purposes of this petition, this Court will assume that consent to search the vehicle was not given and that Petitioner's counsel's conduct fell below an objectively reasonable standard for Strickland purposes by failing to file a motion to suppress. Nonetheless, German cannot satisfy the second prong of prejudice. Relying on the automobile exception and the collective knowledge doctrine, the search of the white Caprice even without consent was legal.

### b.     Failing to Move to Suppress the Statement the Government Claimed Mr. German Made to Police After His Arrest

For a waiver to be valid, the decision to waive one's Miranda rights must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Cardenas, 410 F.3d 287, 293 (5th Cir. 2005). However, a written waiver is not required, nor does an oral waiver need to be express. North Carolina v. Butler, 441 U.S. 369, 375-76, 99 S.Ct. 1755, 1758-59, 60 L.Ed.2d 286 (1979) (an express written or oral statement of waiver "is not inevitably either necessary or sufficient to establish waiver"). At trial, Agent Thomas Mack testified that, after being arrested and prior to making any statements, German was read his Miranda rights and acknowledged that he understood his rights. [Trial Tr., Vol. III pp. 271-80]. Agent Mack's direct examination, cross-examination and re-direct examination all bear out that German was given his Miranda warnings and understood them and still decided to make a statement. Ms. Mann tried vigorously to impeach Agent Mack's testimony and credibility. However, Agent Mack

never changed his testimony. According to German, "[d]espite the express request for counsel, the officer continued to speak and question Mr. German. At no time did Mr. German provide a statement." [Record Document 245 at 8]. German alleges in his affidavit that he never gave a statement and that he was never given his Miranda rights (Record Document 240-2 at 3), but does not point to any evidence in the record that his oral waiver of his Miranda rights was the product of intimidation, coercion, or deception. The failure to have German sign a written waiver form, standing alone, simply does not render his waiver involuntary. See United States v. Willis, 525 F.2d 657, 659 (5th Cir.1976) (the fact that defendant failed to sign waiver form is not enough, in itself, to bar admission of his confession, where other circumstances indicate that the statement was voluntarily given). Thus, counsel's failure to file a motion to suppress German's inculpatory statements, based on his alleged involuntary waiver, does not fall below an objective standard of reasonableness.

Even if a motion to suppress were filed and granted, the evidence presented at trial was so overwhelming that German would have been convicted nonetheless. Therefore, since there can be no prejudice, there was no ineffective assistance of counsel.

### c. Failing to Request a Sentence Below the U.S. Sentencing Guidelines Range Based Upon the Unjust Disparity Between Crack and Powder cocaine

"Mr. German has submitted that his former counsel was prejudicially ineffective for failing to request a sentence below the U.S. Sentencing Guidelines based upon the crack/powder cocaine disparity." [Record Document 245 at 8]. In November of 2007, Amendment 706 to the Guidelines became effective, reducing the base offense levels applicable to certain crack cocaine offenses by two levels. On December 10, 2007, the

Supreme Court decided Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), holding that, in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), "the cocaine Guidelines, like all other Guidelines, are advisory only," and that a district court may deviate from the advisory Guidelines range for crack cocaine offenses based on a conclusion that the disparity between ranges for crack and powder cocaine results in a sentence greater than necessary to achieve the sentencing goals of § 3553(a). Id. at 564. On December 11, 2007, one day after Kimbrough was decided, the Sentencing Commission voted to make Amendment 706 retroactive, effective March 3, 2008.

German was sentenced on December 15, 2005. See Record Document 177. German argues that "at the time of sentencing in December 2005, the advisory Guidelines were in place and the crack/powder disparity issue was widely known among those practicing in federal courts." [Record Document 245 at 9]. The reasonableness of an attorney's actions under Strickland is determined by examining the law and events at the time of the counsel's actions. See Ogan v. Cockrell, 297 F.3d 349, 360 (5th Cir.2002) ("The determination whether the performance of counsel was deficient is based upon the law as it existed at the time of trial."); see also Lucas v. Johnson, 132 F.3d 1069, 1078-1079 (5th Cir. 1998) ("Counsel is not required to anticipate subsequent developments in the law."). At the time of German's sentencing, Kimbrough had not been decided. Therefore, counsel cannot be ineffective for not arguing a sentence below the Guidelines based upon the crack/powder disparity.

**2. Sentenced in Violation of His Rights to Due Process and Trial by Jury**

Petitioner argues "the rules of Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny apply to the Guidelines in such a way that a district court may not impose an enhancement without a finding by the jury beyond a reasonable doubt or an admission by the defendant." [Record Document 245 at 9]. However, in the very next paragraph, the Petitioner concedes that the Fifth Circuit has ruled against this very line of argument holding a "sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005). See also United States v. Johnson, 445 F.3d 793, 798 (5th Cir. 2006). The Court did its work in compliance with the applicable statutory framework and jurisprudence.

Nevertheless, Petitioner urges this Court to consider his argument to preserve his appeal rights. Without a change in case law from the Fifth Circuit or the United States Supreme Court, this Court is left with no other choice than to enforce the law as it is. Accordingly, Petitioner's argument must fail.

**CONCLUSION**

The Court finds that German has failed to establish that he received ineffective assistance of counsel or that he was prejudiced by such performance. Also, German has failed to demonstrate that he was sentenced in violation of his Due Process rights and his right to a trial by jury. For the reasons and analysis above, German's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Record Document 231) shall be **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court *may* direct the parties to submit arguments on whether a certificate should issue." Rule 11(a) Rule Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right.

An order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 19th day of April, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE